UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID B. DAVIS,<br><br>    Petitioner,<br><br>vs.<br><br>MARTIN FRINK,<br><br>    Respondent. | No. 2:16-cv-1159-KJM-EFB P<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding without counsel with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] He challenges a judgment of conviction entered against him on July 24, 2014 in the Shasta County Superior Court on charges of: (1) assault with force likely to cause great bodily injury pursuant to Cal. Penal Code § 24(a)(4); (2) criminal threats pursuant to Cal. Penal Code § 422; and (3) corporal injury pursuant to Cal. Penal Code § 273.5(A). He seeks federal habeas relief on the following grounds: (1) the trial court erroneously admitted evidence of his 2004 conviction for domestic violence; (2) the trial court denied him the right to present a defense by excluding evidence of what motivated him to plead guilty to a prior offense which was presented to the jury; and (3) the cumulative effect of the first two deprived him due process. Upon careful consideration of the record and the applicable law, it is recommended that petitioner's application for habeas corpus relief be denied.

---

[1] The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302.

1

**I. Background**

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third District Appellate District provided the following factual summary:

> *2014 Charges*
>
> On the afternoon of January 3, 2014, Shasta County Deputy Sheriff Meghan Bliss arrived at the home of Carl Norquist, a neighbor of victim Lisa Campbell. Campbell was there and was visibly upset, crying, and her face was red and bloody. When asked about her injuries, Campbell told Bliss that in the morning defendant had "either punched or kicked her in the face while they were laying in bed arguing." Immediately following the incident, Campbell ran to Norquist's home for help. Norquist saw Campbell "was beat up," "[s]he had marks on her face," "[s]he had a bloody lip," and was "rattled" because "she was crying." Campbell told Norquist defendant had "slugged" her in the face and asked him to call 911. While on the phone, Norquist saw defendant leave in his truck.
>
> Campbell told Bliss defendant had also placed both of his hands around her neck and threatened to kill her the night before (January 2). Bliss examined and photographed Campbell's neck, finding no visible injuries there, but did see a bruise directly under Campbell's left eye and injuries on her lips. Defendant was charged with three counts based on this conduct, count 1 for the January 3 injuries to Campbell and counts 2 and 3 for the January 2 threat and assault.
>
> At trial, Bliss and Norquist testified as outlined above. Campbell testified and essentially recanted, denying she and defendant had argued on January 2 or 3, 2014, and denying that he injured her intentionally, instead claiming that he was "thrashing around" and accidently hit her. She claimed throughout her testimony that she did not remember or did not understand. She admitted to lying for defendant to protect him. She identified letters she wrote to him while he was in jail, professing her love for him. She claimed his prior convictions related to their relationship were also based on accidental conduct, as we describe in more detail post. She did confirm that she had started dating defendant in 2007 and during the last two years they had lived together intermittently; she was living with him at the time of the January 2014 incidents.
>
> District Attorney's Investigator Mike Wallace testified as an expert that domestic violence victims will often recant or refuse to cooperate with the criminal justice system. Even if initially cooperative, victims can become hostile as the case progresses and when testifying in court tend to give different versions of events from those in the original police report. Wallace explained strangulation is a form of domination used to instill fear in a victim, and that it is possible to strangle someone without leaving a visible injury.

> Defendant testified that on January 3, 2014, he was not at Campbell's house. He also denied being at Campbell's on January 2. Defendant claimed Campbell fabricated stories. He did, however, characterize his relationship with her as violent, as we describe in more detail immediately post.
>
> *Prior Domestic Violence Convictions*
>
> The trial court admitted evidence of three prior domestic violence incidents pursuant to Evidence Code section 1109, all of which resulted in criminal convictions. Two were for assaultive conduct against Campbell, and had occurred in 2009 and 2010 with resulting convictions in 2009 and 2011. Defendant does not challenge the admission of these two prior incidents on appeal.
>
> The third incident occurred in 2003 and resulted in a 2004 conviction for criminal threats against defendant's then-wife. The witness was unavailable, and the specifics of the threat—which the jury never heard—were that defendant gave his wife a black eye and threatened to kill her, telling her would cut off her head and drink her blood. The trial court took judicial notice of the incident, sanitized as follows: "On March 8th, 2004, in Shasta County Court case No. 03F9579, the defendant pled guilty and was convicted of Penal Code section 422, which is criminal threats, a domestic violence conviction, for an offense occurring on November 29, 2003." This was read to the jury in the form of a stipulation. In addition, the parties stipulated that the 2004 conviction involved a woman other than Campbell, and the court informed the jury that an officer "would testify that he responded to a domestic violence call on November 29, 2003, and contacted victim Cynthia Starkey."
>
> At trial, Campbell characterized the 2009 and 2010 incidents as accidents and claimed to remember very little about both incidents when asked for details.
>
> When asked about the three priors, defendant testified that the 2009 and 2010 incidents were accidents, and that he did not intentionally "stomp on" Campbell in 2009, nor did he intentionally gouge her eyes or stab her with a screwdriver in 2010. When asked about the 2003 threat, he admitted he threatened to kill the victim.

*People v. Davis*, 2016 WL 347842, at *1–2 (Cal.App. 3 Dist., 2016) (unpublished).

**II. Standards of Review Applicable to Habeas Corpus Claims**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, 565 U.S. 34 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 567 U.S. 37, 49 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. *Id.* Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

4

writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

5

previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, 568 U.S. 289, 292 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 562 U.S. at 98).

6

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

**III. Petitioner's Claims**

**A.   Admission of Prior Conviction**

Petitioner alleges that the trial court erred when it admitted his 2004 domestic violence conviction into evidence. ECF No. 1 at 6.[3] The court of appeal provided the following procedural background:

> Prior to trial, the People moved in limine to admit evidence of the 2004 conviction together with the 2009 and 2011 priors (which are unchallenged on appeal). The People argued in the trial court that the 2004 prior, against a different domestic violence victim, showed defendant's propensity to victimize his intimate partners and that his abusive behavior was neither random nor isolated. Defendant argued the prior should be excluded as it was impermissibly remote and not probative.[4]
>
> After some back and forth, the trial court ultimately allowed the evidence of the 2004 prior to be read to the jury as detailed ante, finding that: "ultimately all the acts that resulted in a conviction, are bits and pieces of evidence where the jury can conclude these things aren't accidental, that Mr. Davis just doesn't have a regular relationship with a woman ... that he choose[s] to dominate them in some fashion; that the types of assaults that he carries out involves assaults where his victim is vulnerable." The trial court noted that from 2004 to the present defendant had continuously "demonstrate[ed] his propensity to dominate women," which also weighed in favor of admission and mitigated the remoteness.
>
> At the conclusion of trial, the court instructed the jury pursuant to CALCRIM No. 852 on the limited use of the evidence of prior convictions, stating the priors were relevant to show defendant's disposition to commit domestic violence, but was only one factor for the jury to consider and was not sufficient by themselves to prove guilt.

---

[3] Page number citations such as this one are to the page numbers reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

[4] Evidence Code section 1109, subdivision (e) provides that "[e]vidence of acts occurring more than 10 years before the charged offense is inadmissible under this section, unless the court determines that the admission of this evidence is in the interest of justice." [footnote # 2 in original text]

7

*Davis*, 2016 WL 347842, at *2–3. This claim was raised in the petition for review to the California Supreme Court (Lodg. Doc. 3 at 8) which was summarily denied (Lodg. Doc. 4).

### 1. State Court Decision

The California Court of Appeal denied this claim, reasoning:

> With certain exceptions not relevant here, Evidence Code section 1109 provides that, "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352." (Evid.Code, § 1109, subd. (a)(1).) Subdivision (e) of that same section "establishes a presumption that conduct more than 10 years prior to the current offense is inadmissible.... [I]t sets a threshold of presumed inadmissibility, not the outer limit of admissibility. It clearly anticipates that some remote prior incidents will be deemed admissible and vests the courts with substantial discretion in setting an 'interest of justice' standard." (*People v. Johnson* (2010) 185 Cal.App.4th 520, 539.) Thus "some greater justification for admissibility is necessary under [Evidence Code section 1109,] subdivision (e) than under [Evidence Code] section 352." (*Johnson*, at p. 539.) "[T]he 'interest of justice' exception is met where the trial court engages in a balancing of factors for and against admission under [Evidence Code] section 352 and concludes ... that the evidence was 'more probative than prejudicial.' " (*Johnson*, at pp. 539–540.)
>
> "Relevant factors in determining prejudice include whether the prior acts of domestic violence were more inflammatory than the charged conduct, the possibility the jury might confuse the prior acts with the charged acts, how recent were the prior acts, and whether the defendant had already been convicted and punished for the prior offense(s)." (*People v. Rucker* (2005) 126 Cal.App.4th 1107, 1119.)
>
> Here, defendant first notes that the 2003 incident involved a different victim than the 2014 incidents, consumed little time, and resulted in a conviction—factors which he admits weigh in favor of admission. However, he argues that the 2003 incident was impermissibly remote under the applicable code section and the resulting (2004) conviction lacked similarity to the instant offenses because it was not proven to be a "domestic offense." He adds somewhat contradictorily that its admission was cumulative and prejudicial due to its status as "a conviction identical to one charged."
>
> First and foremost, the jury was told that the 2004 conviction was for making threats in a domestic violence context. As such, the prior was sufficiently similar to the instant charges to be highly probative, as defendant was charged with making threats in a domestic violence context in 2014 in count 2. When coupled with the evidence of defendant's 2014 conduct introduced at trial, the 2004 conviction was highly probative of defendant's willingness to

8

> threaten his intimate partners. (*See People v. Johnson*, *supra*, 185 Cal.App.4th at p. 531; *see also People v. Hollie* (2010) 180 Cal.App.4th 1262, 1274 ["The principal factor affecting the probative value of an uncharged act is its similarity to the charged offense"].) Although the prior conduct had occurred more than 10 years before the current conduct, it was barely a month beyond that limit. Thus, although remote, the prior conduct was not so remote as to add to the prejudice already contemplated by the heightened scrutiny to its admission mandated by the code. Evidence of the prior (as heard by the jury) involved no inflammatory details of any sort, and the nature of the crime was no worse than the crimes defendant was accused of in his current trial. In his current case, the jury heard details of defendant's physical violence toward his intimate partner; there was no such evidence presented to the jury regarding the 2004 prior. Nothing about the prior's admission was inflammatory or otherwise prejudicial such that its probative value did not far outweigh its prejudicial effect.
>
> . . .
>
> Defendant adds a short argument that but for the erroneous admission of the 2004 prior, it is reasonably likely he would have achieved a more favorable result on counts 2 (threats) and 3 (assault). Because we have found no error in the admission of the evidence, we need not reach this argument. We note, however, that in addition to testimony of multiple witnesses regarding the conduct charged in count 1, the jury heard evidence of defendant's prior attacks on Campbell occurring in recent years and resulting in criminal convictions. It heard defendant testify to his violent relationship with her. Further, as we have noted ante, the jury was properly instructed as to the limits of its consideration of this evidence. We do not see the probability of a more favorable result for defendant on the current charges had the limited evidence that he threatened yet another woman in 2003 been excluded. (*See People v. Watson* (1956) 46 Cal.2d 818, 837.)

*Davis*, 2016 WL 347842, at *3-4.

### 2. **Clearly Established Federal Law**

The admission of evidence is generally a matter of state law, and habeas relief does not lie for errors of state law. *Estelle*, 502 U.S. at 67. The erroneous admission of evidence violates due process only if it results in the denial of a fundamentally fair trial. *Id.* at 72. The Supreme Court's decision in *Estelle* specifically noted that "we express no opinion on whether a state law would violated the Due Process Clause if it permitted the use of "prior crimes" evidence to show propensity to commit a charged crime." *Id.* at 75 n. 5.

/////

/////

9

**3.** <u>**Analysis**</u>

As a preliminary matter, this court cannot review the court of appeal's determinations of state law regarding the admissibility of petitioner's prior conviction. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

Turning to Supreme Court precedent, the court cannot say that the court of appeal's rejection of this claim was an unreasonable application of, or contrary to, clearly established federal law. As noted above, the Supreme Court's failure to opine directly on this issue renders federal habeas relief unavailable. *See Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008) ("[Petitioner] can point to no Supreme Court precedent establishing that admission of propensity evidence . . . is unconstitutional. We cannot say that the California Court of Appeal decision was contrary to clearly established Supreme Court precedent."); *Larson v. Palmateer*, 515 F.3d 1057, 1066 (9th Cir. 2008) ("The Supreme Court has expressly reserved the question of whether using evidence of the defendant's past crimes to show that he has a propensity for criminal activity could ever violate due process."). Nor can this court conclude that the admission of this evidence rendered petitioner's trial fundamentally unfair. Admission of evidence can violate due process only if there are no permissible inferences the jury can draw from it. *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991). As the court of appeal reasonably determined, the 2004 conviction was probative of petitioner's willingness to threaten his intimate partners. *Davis*, 2016 WL 347842, at * 3.

Based on the foregoing, this claim should be denied.

**B. Exclusion of Motivation Evidence**

Next, petitioner argues that the trial court erred when it excluded evidence of his motivation to plead guilty to a prior offense. ECF No. 1 at 6. The court of appeals provided the following background:

> Defendant next contends the trial court abused its discretion by excluding evidence of his motivation to plead guilty to the 2011 prior. He asked to testify that "falsely admitting guilt" in order to

10

> "get probation" and avoid a life sentence was "the lesser of two evils."
>
> . . .
>
> At trial, defense counsel sought to admit evidence as to why defendant had admitted guilt in 2011 to spousal abuse in 2010. After some back and forth, the trial court ruled that although the evidence might in some circumstances be admissible, it would apply Evidence Code section 352 to exclude it. The court explained that the reason defendant pleaded guilty was "not that probative of anything," while there was a "great prejudice" in bringing the complex issue of plea bargaining before the jury. The court continued that "opening up a can of worms" would be "far more prejudicial, cumulative,[[5] so much information that would have to come out. [The prosecutor] would be able to [bring in] the lawyer that allowed the defendant to plead guilty in the earlier cases, whatever their discussions would have been, clearly it would have involved attorney/client discussions." After continuing in this vein for a bit, the court ruled that defendant could not discuss "his motives behind pleading the way that he did."

*Davis*, 2016 WL 347842, at *4.

### 1. **State Court Decision**

The court of appeal went on to reject this claim, reasoning:

> We review the trial court's rulings concerning the admissibility of the evidence for abuse of discretion. (*People v. Thornton* (2007) 41 Cal.4th 391, 444–445.) Evidence Code section 352 provides the trial court with discretion to exclude otherwise relevant evidence if its probative value is substantially outweighed by the probability that admitting the evidence will unduly prolong the proceeding, prejudice the opposing party, confuse the issues, or mislead the jury. (*People v. Kirkpatrick* (1994) 7 Cal.4th 988, 1014.) Although a defendant has the general right to offer a defense through the testimony of his or her witnesses, "a state court's application of ordinary rules of evidence—including the rule stated in Evidence Code section 352—generally does not infringe upon this right" to a defense. (*People v. Cornwell* (2005) 37 Cal.4th 50, 82, overruled on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)
>
> Here, as the trial court pointed out, permitting defendant to introduce his motivation to plead in 2011 would open up this motivation to cross-examination and rebuttal by the People. This would result in a potentially lengthy and certainly collateral mini-trial, which clearly the trial court was willing to entertain permitting, from its comments as to what the "can of worms" would entail. This side issue would potentially lead to confusion within

---

[5] We observe that the trial court most likely meant to say time consuming—rather than cumulative—given the context. [footnote # 3 in original text]

11

| | |
|---|---|
| 1 |                 the jury and would certainly necessitate undue consumption of time. (*See* Evid.Code, § 352.) We conclude the trial court did not abuse its discretion by excluding this evidence. |

1                  the jury and would certainly necessitate undue consumption of
                time. (*See* Evid.Code, § 352.) We conclude the trial court did not
2                 abuse its discretion by excluding this evidence.

3 *Id.* This claim was raised in the petition for review to the California Supreme Court (Lodg. Doc. 3

4 at 16) which was summarily denied (Lodg. Doc. 4).

5                 **2.**       <u>**Clearly Established Federal Law**</u>

6       The Constitution guarantees criminal defendants "a meaningful opportunity to present a

7 complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). The exclusion of evidence can

8 violate a defendant's due process rights if it deprives him of "a fair opportunity to defend against

9 a state's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). Nevertheless, "state

10 and federal rulemakers have broad latitude under the Constitution to establish rules excluding

11 evidence from criminal trials." *Nevada v. Jackson*, 565 U.S 505, 509 (2013) (per curiam). "Only

12 rarely [has the Supreme Court] held that the right to present a complete defense was violated by

13 the exclusion of defense evidence under a state rule of evidence." *Id.* A federal habeas court will

14 not find a due process violation where the excluded evidence was only marginally relevant or

15 repetitive. *Crane*, 476 U.S. at 689-90. Finally, even where a trial court's exclusion of evidence

16 was erroneous, federal habeas relief is not available unless the error had a substantial and

17 injurious effect on the verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).

18                 **3.**       <u>**Analysis**</u>

19      As with petitioner's previous claim, this court cannot review the correctness of the state

20 law determinations used to exclude this evidence. *See Bradshaw*, 546 U.S. at 76.

21      With respect to the federal law, the Constitution does not preclude the discretionary

22 exclusion of evidence to maintain efficient trial proceedings. *See Moses v. Payne*, 555 F.3d 742,

23 757 (9th Cir. 2009). Here, the state courts reasonably determined that allowing petitioner to

24 present evidence of his motivation to plead guilty would result in a lengthy 'mini-trial' which was

25 not directly relevant to the allegations at bar. Indeed, given the marginal relevance of petitioner's

26 motivation to plead guilty to a prior, separate offense, it is impossible to conclude that the

27 exclusion of this evidence prevented plaintiff from presenting a complete defense. *See Perry v.*

28 *Rushen*, 713 F.2d 1447, 1453 (9th Cir. 1983) ("Evidence of little importance, whether merely

cumulative or of little probative value, will almost never outweigh the state interest in efficient judicial process."); *Wood v. State of Alaska*, 957 F.2d 1544, 1549 (9th Cir. 1992) ("A defendant has no right, however, to present irrelevant evidence."). Nor can petitioner demonstrate that the exclusion of this evidence had a substantial or injurious effect on the verdict. Even if petitioner had been allowed to present this evidence to the jury, it would have had no direct bearing on the question of whether he was guilty of the current allegations against him. And substantial evidence supported the jury's finding that petitioner struck, choked, and threatened the victim. RT 239-240; 247-251.

This claim should be denied.

### C. Cumulative Error

Finally, petitioner argues that the cumulative impact of the trial court's errors represented in his first two claims violated his due process rights. ECF No. 1 at 6. The court of appeal addressed this claim only by way of a footnote wherein it stated that "[a]lthough defendant also contends the cumulative effect of the errors requires reversal of counts 2 and 3, as we have found no error the contention necessarily fails." *Davis*, 2016 WL 347842, at *4 n.4.

#### 1. Clearly Established Federal Law

Multiple trial errors violate a petitioner's due process where their combined effect renders his trial fundamentally unfair. *Chambers v. Mississippi*, 410 U.S. 284, 298 (1973). "Under traditional due process principles, cumulative error warrants habeas relief only where the errors have so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007) (internal quotation marks omitted).

#### 2. Analysis

This claim fails. First, the state court of appeal reasonably determined that no error occurred. Second, this court finds no constitutional error with respect to the first two claims and, as such, petitioner is not entitled to habeas relief on the basis of cumulative error. *See Fairbank v. Ayers*, 650 F.3d 1243, 1257 (9th Cir. 2011) ("[B]ecause we hold that none of [petitioner]'s claims rise to the level of constitutional error, 'there is nothing to accumulate to a level of a constitutional violation.'"); *see also Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996).

13

**IV. Conclusion**

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: May 2, 2018.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE